UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| WALTER JOHN MEACHUM, III, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos. 3:18-CV-504 |
| | ) | 3:15-CR-085 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>MEMORANDUM OPINION</u>

Before the Court is Walter John Meachum, III's ("Petitioner's") *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. 1; Criminal Docket ("Crim.") Doc. 80].[1] The United States has responded in opposition. [Doc. 9]. Petitioner did not file a reply, and the time for doing so has passed.[2] *See* Rule 5(d) of the Rules Governing Section 2255 Proceedings for the United States District Courts; *see also* [Doc. 13]. For the reasons below, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 80] will be **DENIED**.

### I.     BACKGROUND

In September 2015, Petitioner and one co-defendant was charged in an eleven-count superseding indictment pertaining to three convenience store/gas station robberies. [Crim.

---

[1] Document numbers not otherwise specified refer to the civil docket.
[2] The Court gave Petitioner a 60-day extension followed by a 30-day extension within which to file a reply brief, but he failed to do so. [*See* Docs. 11 & 13].

Doc. 16]. Petitioner was named in all eleven counts and charged with multiple counts of Hobbs Act Robbery, multiples counts of carjacking, multiple counts of discharging a firearm during and in relation to a crime of violence, and possessing ammunition as a convicted felon. [*See id*.].

Petitioner's counsel arranged for a psychiatric evaluation, then petitioned the Court to direct the Bureau of Prisons to conduct a psychological evaluation on Petitioner's competence to stand trial and his sanity at the time of the offenses. [Crim. Docs. 27 & 31]. Petitioner was sent for restoration August 2016, and in January 2017, a Bureau of Prisons forensic psychologist notified the Court that Petitioner was malingering but competent to stand trial. [Crim. Docs. 41 & 52]. After receiving another evaluation by a different psychologist, Petitioner confirmed that he was "getting his antipsychotic medication" and was found competent to stand trial March 2017. [Crim. Doc. 52].

On June 21, 2017, Petitioner entered into a plea agreement with the government. [Crim. Doc. 54]. Petitioner agreed to plead guilty to two counts of using, carrying, brandishing and discharging a weapon during in and relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1), listed as separate and distinct convictions for violations of 18 U.S.C. § 924(c)(1). [*See id*.] Petitioner also stipulated that he was subject to statutory minimum penalties of 10 years for the first offense and 25 years for the second offense for a total of 35 years' imprisonment. [*Id*.] The plea agreement was signed by Petitioner and attorney Benjamin G. Sharp.

In his plea agreement, Petitioner acknowledged that on April 25, 2015, the Midway Market in Speedwell, Tennessee was robbed by an unknown male, later identified as

Petitioner. Petitioner walked into the business dressed in a black jacket, black shirt, and wore a black mask to conceal his face. Petitioner pointed a handgun, believed to be a .38 revolver, at the store owner and demanded money. After taking the money and a carton of Marlboro Red cigarettes, Petitioner took the victim store owner's cell phone and broke it in half. At this time, another victim walked in, observed Petitioner with the gun, and quickly ran back out of the store. Petitioner gave chase and fired approximately three rounds in the victim's direction. Petitioner then entered the victim's Chevrolet S10 pick-up truck and fled the location.

On May 14, 2015, Petitioner robbed the Marathon gas station in LaFollette, Tennessee. Petitioner pointed a firearm at several witnesses, then discharged the weapon into the counter where one of the bullets struck a twelve-year old female victim. Petitioner then went behind the counter, opened the cash register, and stole the money from the register. Petitioner encountered numerous people in the parking lot upon exiting the store and pointed his weapon at several people sitting in a 2014 grey Toyota Camry in the parking lot. Petitioner ordered them out of the vehicle before entering the vehicle and fleeing the scene.

On May 19, 2015, the Petitioner robbed the Pilot convenience store in Heiskell, Tennessee. Petitioner was described by victims as acting as if he were on drugs. Petitioner entered the business, pointed a handgun at a victim, and demanded money. After, Petitioner fired one round from the handgun in the direction of the victim. Petitioner then exited the store with an undetermined amount of money and fled in a silver Honda convertible. On the same day, the Campbell County Sheriff's Office received a call reporting a stolen silver

3

Honda S2000 convertible. The stolen Honda convertible was later found abandoned in Knox County, Tennessee.

On May 20, 2015, Petitioner and co-defendant were located at the Scottish Inn in Rocky Top, Tennessee where Petitioner was arrested for aggravated robbery. A search warrant was executed on their hotel room by the Knox County Sheriff's Office and the following items were located: damaged Nokia cellular phone, skeleton mask, Honda key, .22 ammunition, an improvised firearm with a .22 barrel, foreign currency, knife, and additional miscellaneous items. The Honda key was returned to the victim of the stolen Honda, who identified the key as belonging to his recovered Honda convertible. Co-defendant identified the defendant as the perpetrator of the Marathon gas station robbery and the Pilot convenience store robbery as she went along with him on both robberies. Co-defendant stated that she did not know Petitioner was robbing [sic] Marathon gas station and did not know he had a gun, but she did know about the Pilot robbery, willingly assisted him, and knew that he had the gun. Petitioner had also recently sold a silver Taurus .38 revolver to another individual. [*Id*.].

The Court conducted a change of plea hearing on July 11, 2017, the transcript for which is attached as Exhibit A to this memorandum. At the hearing, Petitioner answered all questions posed to him clearly and appropriately. [Ex. A]. He stated his full name when asked; answered the Court's questions regarding his education, age, and medical treatments; stated his diagnosis; told the Court about the medications he was currently taking; and confirmed with the Court that he knew why he was there, what the charges against him were, that he wanted to plead guilty, that he understood the rights he was giving

up by pleading guilty, and that his sentence would be determined by the Court after receiving the PSR. [*Id*. at 2-9, 14-19].

The revised PSR calculated a criminal history category of IV. [Crim. Doc. 73, ¶ 41]. There was no offense level determination and Petitioner was subject to the statutory minimum terms of imprisonment, 10 years for Count 6 and 25 years for Count 10, to be served consecutively. [*Id*. at ¶¶ 63-66]. The PSR also noted that, but for Petitioner's plea agreement dismissing Counts 2, 4, and 8, he would have been subject to an additional 75 years, to be served consecutively, in addition to the guideline sentences for the remaining counts which were dismissed. [*Id*. at ¶ 68].

The government filed a notice of no objections to the PSR. [Crim. Doc. 71]. Petitioner did not file any objections to the PSR but did file a sentencing memorandum through counsel requesting a sentence at the minimum mandatory level of 35 years, citing Petitioner's severe mental health issues and his need for continued mental health treatment. [Crim. Doc. 75].

On November 16, 2017, the Court sentenced Petitioner to the statutory minimum sentence, a total of 420 months' imprisonment and then five years of supervised release. [Crim. Doc. 78]. Petitioner did not file a direct appeal, but on November 26, 2018, he filed this timely § 2255 motion.

## II.     STANDARD OF REVIEW

Under § 2255(a), a federal prisoner may move to vacate, set aside, or correct his judgment of conviction and sentence if he claims that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose

5

the sentence, or that the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). As a threshold standard, to obtain post-conviction relief under § 2255, the motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A movant bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *See Reed v. Farley*, 512 U.S. 339, 353 (1994) (noting that the Petitioner had not shown that his ability to present a defense was prejudiced by the alleged constitutional error); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (addressing the harmless-error standard that applies in habeas cases alleging constitutional error). To obtain collateral relief under § 2255, a movant must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). A movant must prove that he is entitled to relief by a preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). A motion that merely states general conclusions of law, without substantiating the allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

6

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. Rules Governing Section 2255 Proceedings, Rule 8(a). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts." *Valentine*, 488 F.3d at 333 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). The Court **FINDS** no need for an evidentiary hearing in the instant case.

## III.  ANALYSIS

As an initial matter, Petitioner seems to raise two claims in this § 2255 motion: 1) ineffective assistance of counsel for "coercing" Petitioner's guilty plea as Petitioner "could NOT have been of sound mind and cognitive after the documented months of involuntary administration of a plethora of antipsychotic drugs during his pre-trial confinement and plea hearing", and 2) that Petitioner's change of plea was not voluntary because of the "mind-altering and sedative drugs 'forcibly' administered to him" as he could not have understood or realized the dire consequences of pleading guilty when under the influence of antipsychotic drugs. [Doc. 1; Crim. Doc. 80]. The Court will first address Claim 2, and then Claim 1.

### A.  Claim 2 – That Petitioner's Change of Plea was Involuntary

7

### a. Collateral Attack Waiver

As a preliminary matter, the Court first notes that Petitioner's plea agreement contains a collateral attack waiver wherein Petitioner agreed not to collaterally attack his sentence except for claims of prosecutorial misconduct and ineffective assistance of counsel. [Crim. Doc. 54]. When a defendant knowingly, intelligently, and voluntarily waives the right to collaterally attack his sentence, he is precluded from bringing such claims. *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001) (citing to *United States v. Fleming*, 239 F.3d 761, 763 (6th Cir. 2001). A waiver in a plea agreement is generally considered knowing and voluntary if a defendant testified that his guilty plea was not coerced and that he reviewed and understood the agreement terms. *Id*. An exception to the general rule exists if the collateral attack concerns the validity of the waiver itself. *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). However, in situations where the § 2255 motion does not articulate a basis for attacking the validity of the waiver, the Sixth Circuit and lower courts within the Circuit have upheld collateral attack waivers if the waivers were knowing and voluntary. *Watson v. United States*, 165 F.3d at 486, 489 (6th Cir. 1999); *United States v. Eversole*, No. 6:05-cr-34, 2010 WL 420067, at *2, n.3 (E.D. Ky. Feb. 1, 2010).

In this case, Petitioner signed a Plea Agreement containing the following waiver provision: "[t]he defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a §2255 motion as to (i) prosecutorial misconduct not known to the defendant by the time of the entry of the judgment and (ii)

8

ineffective assistance of counsel." [Cim. Doc. 54, p. 8]. At Petitioner's change of plea hearing, the Court complied with Federal Rule of Criminal Procedure 11(b) and ensured that Petitioner understood and was fully informed about the terms of the plea agreement, including the appellate waiver. [Ex. A, pp. 5-9, 14-24]. Petitioner's counsel stated that Petitioner was competent to enter his plea, and the Court concluded that Petitioner was competent to enter a plea and that he did so knowingly and voluntarily. [*Id*. at 5 & 22]. Thus, the Court finds that Petitioner's plea agreement was knowingly and voluntarily made and nothing in the Court's review of the record suggests otherwise.

Because Petitioner expressly waived the right to collaterally attack his conviction except for claims of ineffective assistance of counsel and prosecutorial misconduct, Claim 2 is barred by the knowing and voluntary waiver contained in the binding Plea Agreement. *See Davila*, 258 F.3d at 451. The Court further notes that this claim is procedurally defaulted, because Petitioner failed to raise it on appeal. Except for a claim of ineffective assistance of counsel, a federal prisoner's failure to raise a claim on direct appeal results in a procedural default of that claim. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). For a federal prisoner to obtain review of a defaulted claim in a § 2255 motion, he must show cause to excuse his failure to raise the claim previously and actual prejudice resulting from the alleged violation. *Bousley*, 523 U.S. at 622; *Peveler*, 269 F.3d at 698-700. If a Petitioner cannot show cause and prejudice, he may be able to obtain review, if his case falls within a narrow class of cases permitting review in order to prevent a fundamental miscarriage of justice, such as when new evidence shows that a constitutional violation has probably resulted in a

conviction of one who is actually innocent. *Bousley*, 523 U.S. at 622-23, citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). Here, Petitioner has not attempted to show cause or prejudice for his failure to raise this claim on direct appeal, nor has he attempted to show that he was actually innocent.

Accordingly, Petitioner's Claim 2 will be **DENIED** as barred by his collateral attack waiver and procedurally defaulted. However, as discussed below, this claim alternatively fails on the merits.

### b. Merits

Petitioner claims that he was mentally incompetent to change his plea. However, as the Supreme Court has explained, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The record flatly contradicts Petitioner's specific claims that 1) he was forcibly medicated against his will, 2) that he was overmedicated and barely knew his own name or where he was at his sentencing and change of plea hearings, and 3) that he was incompetent to stand trial.

First, Petitioner claims he was forcibly medicated against his will. This allegation is contradicted by the record as there is no record of Petitioner refusing medication or stating that he was receiving medication against his will. On the contrary, when Petitioner told the Court about his mental health issues and his medication at his change of plea hearing he did not indicate that he was taking the medications against his will. [*See* Ex. A, pp. 4-5]. Neither was there any indication from the Bureau of Prisons that Petitioner ever expressed

a desire to refuse his medication. [*See* Crim. Docs. 40, 41, 44, 48, & 52]. At his sentencing hearing, Petitioner read a letter which he had written to the Court and stated, "He [the doctor] also began prescribing me medicine that was supposed to help me. I still take it to this day…" [Crim. Doc. 89, p. 9]. At no point during the sentencing hearing or any other hearing or pleading on the record does Petitioner state or imply that he was being forced to take any medication against his will or that he did not wish to take anti-psychotic medication. [Crim. Docs. 27, 40, 52, 75, & 89; Ex. A]. As the record directly contradicts Petitioner's allegation that he was forcibly medicated against his will, it is not credited by the Court. *Blackledge*, 431 U.S. at 74.

Second, Petitioner claims that he was unaware of his name or where he was during his change of plea and at sentencing, and describes himself as "in a catatonic state of mind and a walking zombie." [Doc. 2, p. 9]. Petitioner also states:

> during his sentencing hearing, Petitioner Meachum went so far as to advise the Court that his wife was sitting in the courtroom and was there for the sold [sic] purpose of speaking in [sic] his behalf. A review of Petitioner's [PSR] and other penal records will conclusively reveal that Petitioner has <u>never been married</u> and was obviously suffering the side effects of the antipsychotic drugs being administered causing him to hallucinate.

(emphasis in original). This allegation is in direct contrast with the record. At Petitioner's competency hearing, change of plea hearing, and at sentencing, he answered the Court's questions clearly and directly. [Crim. Docs. 52 & 89; Ex. A]. Further the Court made findings based on its own observations of Petitioner in the courtroom in determining whether Petitioner was competent. [Crim. Docs. 52 & 89]. There is no indication in the record that Petitioner was "catatonic" or a "walking zombie" after he was determined to be

11

competent to stand trial. [*See* Crim. Doc. 89; *see also* Ex. A]. Further, Petitioner's argument regarding his "wife" is also contradicted by the record and not credited. *Blackledge*, 431 U.S. at 74. At sentencing, Petitioner read a letter that he had written to the Court wherein he stated, "Here in the past year, though, I met my imaginary friend Jenny, and she's been with me since last November, and she's my faithful, loving wife." [Crim. Doc. 89, p. 10]. Petitioner continues to refer to Jenny throughout the letter as his "imaginary wife" and does not claim that she is a real person or that she is in the courtroom to speak on Petitioner's behalf. [*Id*. at 10-11]. Thus, Petitioner's allegation is directly contradicted by the record and is not credited. *Blackledge*, 431 U.S. at 74.

Finally, Petitioner claims that he was incompetent to stand trial and the Court erred in determining that Petitioner was competent. A defendant's competence to enter a guilty plea is measured under the same standard applicable to competence to stand trial. *Godinez v. Moran,* 509 U.S. 389, 397-98 (1993). The Court must find a defendant not competent to stand trial if "the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d). The Supreme Court has framed the standard as "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.' " *Godinez,* 509 U.S. at 396, 113 S.Ct. 2680 (quoting *Dusky v. United States,* 362 U.S. 402, 402 (1960)); *accord Mallett*

*v. United States,* 334 F.3d 491, 494-95 (6th Cir. 2003); *see also United States v. Heth*, 338 F. App'x 489, 496 (6th Cir. 2009).

The record shows that Petitioner was coherent, answered the Court's questions clearly, and displayed rationality and understanding at his hearings after he was restored. [Crim. Docs. 52 & 89; Ex. A]. The record indicates that Petitioner was evaluated by at least three doctors, and that Petitioner did not dispute the findings of the Bureau of Prisons evaluation that Petitioner was competent to stand trial. [Crim. Doc. 52, pp. 1-3]. As the record directly contradicts Petitioner's claim, his claim is not credited. *Blackledge*, 431 U.S. at 74.

Because Petitioner's claims are directly contradicted by the record and are not credited, his claim fails to provide a basis for which § 2255 relief may be granted.

## B. Claim 1 – Ineffective Assistance of Counsel

As discussed above, Petitioner's claim of ineffective assistance of counsel is not barred by his collateral attack waiver. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a movant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

To prove deficient performance, the movant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A movant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. at 687. The movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id*. at 703. Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Petitioner's claim accuses his attorney of providing ineffective assistance at the plea stage. [Docs. 1, 2]. "A guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970)). As noted,

14

in the guilty-plea context, the Supreme Court employs the same two-part standard for ineffectiveness that was developed in *Strickland*. *See Hill*, 474 U.S. at 58-59. That is, a petitioner must demonstrate that (1) his attorney's performance was outside the range of competence demanded of attorneys in the criminal context, and (2) the professionally unreasonable performance prejudiced him. To show prejudice in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Petitioner's primary argument for ineffective assistance of counsel is that his counsel coerced Petitioner's guilty plea knowing that Petitioner could not have been of sound mind after being involuntarily administered antipsychotic medication. [Doc. 2, p. 7]. First, this claim lacks specific factual support for the allegation as it fails to state how Petitioner's counsel "coerced" him into pleading guilty and merely makes a conclusory allegation that "attorney Sharp continued to uncaringly and ineffectually coerce his hapless and catatonic client to enter a plea of guilty…" [*Id*. at 10]. As a result, the Court can reject this contention as insufficient to sustain the motion. *See Ushery v. United States*, No. 20-5292, 2020 U.S. App. LEXIS 21840, at *3–4 (6th Cir. July 14, 2020).

Second, Petitioner's arguments fail at *Strickland's* second step. Petitioner lists conclusory allegations regarding his counsel's alleged ineffectiveness but does not show how he was prejudiced by any of them. [Doc. 2, pp. 13-14]. Petitioner claims that his counsel failed to investigate the facts of the case and failed to discuss and exchange views regarding the entering of the plea agreement, but does not claim that the factual basis was

15

not as presented to the Court and agreed to in the Plea Agreement or that Petitioner would have proceeded to trial but for counsel's mis-advice. [*Id*. at 13]. Petitioner claims that counsel was ineffective for failing to explain the consequences of pleading guilty, the consequences of the sentencing guidelines, the consequences of mandatory/minimum sentences, and the nature of the charges. [*Id*. at 13-14] However, Petitioner cannot show prejudice as the record shows that these consequences were explained to him by the Court at his change of plea hearing *before* the Court accepted his change of plea and again at sentencing. [Ex. A; Crim. Doc. 89].

Petitioner also claims his counsel was ineffective for failing to follow-up and arrange a court ordered independent psychologist evaluation in a timely manner and failing to assert the right to a speedy trial as Petitioner was held 30 months before a trial/plea had taken place.[3] Petitioner has failed to show ineffectiveness as to these claims because the record indicates that Petitioner did receive multiple psychological evaluations, court-ordered and independent, [*See* Crim. Doc. 52], and the delay in trial was properly excluded by the Court under the Speedy Trial Act as Petitioner was being evaluated to determine his competency to stand trial, thus his counsel had no basis to allege a speedy-trial violation. [*See id*.]; *see also Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999) ("[c]ounsel could not be constitutionally ineffective for failing to raise . . . meritless arguments.").

---

[3] Petitioner also raises conclusory allegations that his appellate counsel was ineffective, and that the Court and the prosecutor denied his right of access to the courts and equal protection. [Doc. 2, p. 14]. Petitioner did not file an appeal, so he was not appointed appellate counsel, neither has Petitioner provided any factual support regarding his access to the Court claim. Accordingly, the Court rejects these claims as they lack any factual support. *See Ushery*, 2020 U.S. App. LEXIS 21840, at *3–4.

16

Further, even if Petitioner had provided specific allegations of his counsel's conduct and prejudice, the motion would still be denied. As discussed above, Petitioner's claim that he was incompetent to stand trial or plead guilty is directly contradicted by the record and is not credited. *See Blackledge*, 431 U.S. at 74. Further, Petitioner has not alleged that he would not have pled guilty or proceeded to trial but for counsel's mis-advice. Petitioner thus cannot bear his burden of showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Accordingly, Petitioner's Claim 1 will be **DENIED** as the record directly contradicts Petitioner's claims, and Petitioner has not shown that he was prejudiced by any alleged ineffectiveness of counsel.

## IV.     CONCLUSION

For the reasons above, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 80] will be **DENIED** and **DISMISSED**.

## V.     CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." *Id.* The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

17

A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack*, 529 U.S. at 484. A petitioner whose claims have been rejected on a procedural basis must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Id*.; *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001). Having examined Petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of those claims was debatable or wrong. Therefore, the Court will **DENY** issuance of a certificate of appealability.

A separate judgment will enter.

**IT IS SO ORDERED.**

ENTER:

_____
    s/ Leon Jordan
United States District Judge

# EXHIBIT

# A

1             IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF TENNESSEE
2               AT KNOXVILLE, TENNESSEE
_____

3  UNITED STATES OF AMERICA,   )
                       )
4        Government,      )
                       )
5  vs.                 )  Case No. 3:15-cr-85
                       )
6  WALTER JOHN MEACHUM, III,   )
                       )
7        Defendant.      )
_____

8             **CHANGE OF PLEA PROCEEDINGS**
        **BEFORE THE HONORABLE PAMELA L. REEVES**
9

               **July 11, 2017**
10          **1:33 p.m. to 1:57 p.m.**

11  **APPEARANCES**:

12        **ON BEHALF OF THE GOVERNMENT**:

13        CYNTHIA F. DAVIDSON, ESQ.
        MS. BRITTANY SIMS (Extern)
14        U.S. DEPARTMENT OF JUSTICE
        OFFICE OF U.S. ATTORNEY
15        800 Market Street
        Suite 211
16        Knoxville, TN 37902

17

        **ON BEHALF OF THE DEFENDANT**:
18

        BENJAMIN SHARP, ESQ.
19        FEDERAL DEFENDER SERVICES OF EASTERN
        TENNESSEE, INC.
20        800 South Gay Street
        Suite 2400
21        Knoxville, TN 37929

22  **REPORTED BY**:

23  Teresa S. Grandchamp, RMR, CRR
  P.O. Box 1362
24  Knoxville, Tennessee 37901
  (865) 244-0454
25

1        THE COURTROOM DEPUTY:  All rise.

2            The United States District Court for the

3    Eastern District of Tennessee is now open pursuant to

4    adjournment.  The Honorable Pamela Reeves, United States

5    District Judge, presiding.

6            Please come to order and be seated.

7            THE COURT:  Good afternoon.

8            MS. SIMS:  Good afternoon.

9            MR. SHARP:  Good afternoon.

01:33PM  10        THE COURT:  Miss Archer, if you'll call our

11    next case, please.

12            THE COURTROOM DEPUTY:  Yes, Your Honor.

13            We're here for a change of plea in 3:15-cr-85,

14    Defendant No. 1, United States of America versus Walter

15    John Meachum, III.

16            Is the government present and ready to proceed?

17            MS. SIMS:  Present and ready, Your Honor.

18            THE COURTROOM DEPUTY:  Is the defendant present

19    and ready to proceed?

01:33PM  20        MR. SHARP:  Yes, Your Honor.

21            THE COURT:  Mr. Sharp, if you'll ask your

22    client to come with you, please, up to the lectern.

23            (The defendant was thereupon duly sworn.)

24            THE COURT:  Mr. Meachum, good afternoon.

25            THE DEFENDANT:  Good afternoon.

1           THE COURT:  Mr. Meachum, I've been informed

2    that you wish to change your plea to a plea of guilty;

3    is that correct?

4           THE DEFENDANT:  Yes, ma'am.

5           THE COURT:  All right.  I'm going to ask if

6    you'll get a little closer to the microphone and speak

7    up a little bit so that our court reporter can hear you.

8           Now, Mr. Meachum, before I can accept your

9    guilty plea, there are a number of questions that I must

01:34PM 10   ask you to assure that your plea is a valid one.

11          Do you understand that you are now under oath,

12   and if you answer any of my questions falsely, your

13   answers may be used against you in another prosecution

14   for making a false statement or committing perjury?

15          THE DEFENDANT:  Yes.  Yes, ma'am.

16          THE COURT:  Will you give us your full name,

17   please.

18          THE DEFENDANT:  Walter John Meachum, III.

19          THE COURT:  Are you known by any other names or

01:34PM 20   nicknames?

21          THE DEFENDANT:  No.

22          THE COURT:  How old are you?

23          THE DEFENDANT:  23.

24          THE COURT:  How far did you go in school?

25          THE DEFENDANT:  The 11th grade.

         1            THE COURT:  Now, Mr. Meachum, have you ever
         2   been treated for any mental illness or addiction to
         3   narcotic drugs of any kind?
         4            THE DEFENDANT:  Yes, ma'am.
         5            THE COURT:  Tell me about those treatments,
         6   please.
         7            THE DEFENDANT:  The mental health treatment.
         8            MS. SIMS:  When was that?
         9            THE DEFENDANT:  My whole life.  Since I was in
01:35PM 10   the fifth grade.
        11            THE COURT:  And what kind of diagnosis do you
        12   have?
        13            THE DEFENDANT:  Paranoid schizophrenic.
        14            THE COURT:  Okay.  Are you on medication for
        15   that diagnosis?
        16            THE DEFENDANT:  Yes, ma'am.
        17            THE COURT:  And do you take that medication
        18   now?
        19            THE DEFENDANT:  Yes, ma'am.
01:35PM 20            THE COURT:  So if you will please tell me what
        21   types of medication you have taken in the last 24 hours.
        22            THE DEFENDANT:  Seroquel, Risperdal, Effexor,
        23   cogentin, and Ativan.
        24            THE COURT:  All right.  And, Mr. Meachum,
        25   that's a pretty significant combination of drugs.  Is

there anything about any of those medications that you

have taken in the last 24 hours that prevent you from

understanding what's going on here today?

        THE DEFENDANT:  No, ma'am.

        THE COURT:  So you know why you're here?

        THE DEFENDANT:  Yes, ma'am.

        THE COURT:  And you know what's happening here

today?

        THE DEFENDANT:  Yes, ma'am.

        THE COURT:  Now, Mr. Sharp, do you consider

your client to be competent to enter a guilty plea

today?

        MR. SHARP:  Yes, Your Honor.

        THE COURT:  Now, Mr. Meachum, did you receive a

copy of the superseding indictment in this case?

        THE DEFENDANT:  Yes, ma'am.

        THE COURT:  And have you had ample opportunity

to discuss the charges against you and your case with

your lawyer?

        THE DEFENDANT:  Yes, ma'am.

        THE COURT:  Have you told your lawyer

everything you know about this case?

        THE DEFENDANT:  Yes, ma'am.

        THE COURT:  And do you believe that Mr. Sharp

is fully aware of all the facts upon which those charges

1  are based?

2          THE DEFENDANT:  Yes, ma'am.

3          THE COURT:  Has your lawyer advised you of the

4  nature and the meaning of these charges?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  Has your lawyer explained to you

7  the meaning of any words in the superseding indictment

8  that you might not have understood?

9          THE DEFENDANT:  No, ma'am.

01:36PM 10          THE COURT:  All right.  Let me ask that

11  question again.

12          What I want to know is:  Were there any words

13  in the indictment or the superseding indictment that you

14  didn't understand?

15          THE DEFENDANT:  No, ma'am.

16          THE COURT:  So you feel like you know exactly

17  what you're being charged with as a result of that

18  indictment?

19          THE DEFENDANT:  Yes, ma'am.

01:37PM 20          THE COURT:  And, Mr. Sharp, do you agree that

21  you've had the opportunity to explain the meaning of any

22  words in the superseding indictment to Mr. Meachum?

23          MR. SHARP:  Yes, Your Honor.

24          THE COURT:  Has your lawyer specifically

25  advised you as to every element of the offenses that the

1  government must prove beyond a reasonable doubt in order

2  to obtain a conviction?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  And has your lawyer advised you as

5  to any potential defenses that you may have to these

6  charges?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  Has your lawyer explained the terms

9  of the plea agreement to you?

01:37PM 10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  Now, Mr. Meachum, as you stand here

12  in this court this afternoon, are you satisfied with

13  your lawyer's advice and his representation of you?

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  Mr. Sharp, are you satisfied that

16  your client understands the charges, the elements of the

17  offenses that are being charged, and the legal meaning

18  of the words used in the superseding indictment?

19          MR. SHARP:  Yes, Your Honor.

01:38PM 20          THE COURT:  Mr. Meachum, when a person enters a

21  guilty plea, they are giving up some valuable

22  constitutional rights.  I'm going to ask you some

23  questions to ensure that you know what constitutional

24  rights you're giving up.

25          Do you understand that you have the right to

1  plead not guilty to any offense charged against you and

2  to persist in that plea?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  Do you also understand that you

5  would then have the right to a trial by jury, during

6  which you would also have the right to the assistance of

7  counsel for your defense?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  And you understand you would have

01:38PM  10  the right to see and hear all of the witnesses?

11          THE DEFENDANT:  Yes, ma'am.

12          THE COURT:  And have them cross-examined?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  And you understand you would have

15  the right on your own part not to testify unless you

16  chose to do so?

17          THE DEFENDANT:  Yes, ma'am.

18          THE COURT:  And that, finally, you would have

19  the right to the issuance of subpoenas or compulsory

01:39PM  20  process that could compel the attendance of witnesses

21  who might testify on your behalf?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  Now, Mr. Meachum, do you understand

24  that by entering a plea of guilty, if I accept that

25  plea, there will be no trial, and you will have given up

1   the right to a trial of any kind, as well as the other

2   rights associated with a trial that I have just

3   described to you?

4           THE DEFENDANT:  Yes, ma'am.

5           THE COURT:  And, sir, do you also understand

6   that you'll be giving up the right not to be compelled

7   to incriminate yourself?

8           THE DEFENDANT:  Yes, ma'am.

9           THE COURT:  And that, finally, you're giving up

01:39PM 10  the right to require that the United States prove you

11  guilty beyond a reasonable doubt?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  Mr. Meachum, has any person,

14  including an officer or agent of the government, put any

15  pressure on you, mental or physical, to force you to

16  plead guilty?

17          THE DEFENDANT:  No, ma'am.

18          THE COURT:  And other than the plea agreement,

19  has any officer or agent of the government promised or

01:40PM 20  suggested that you will receive a lighter sentence or

21  some other form of leniency if you plead guilty?

22          THE DEFENDANT:  No, ma'am.

23          THE COURT:  Mr. Sharp, does your client want to

24  waive reading of the indictment?

25          MR. SHARP:  He will waive reading.

1          THE COURT:  Very well.  I'm going to allow the

2     two of you to return to counsel table.  And I'm going to

3     ask Miss Sims if she will come forward.

4          Miss Sims, on behalf of the government, will

5     you please explain to Mr. Meachum the essential elements

6     which the government must prove in order to establish

7     his guilt of the charges set forth in the superseding

8     indictment, the maximum and minimum penalties that are

9     provided by law for the charged offenses, and the

01:40PM 10     factual basis for the plea, all of which are contained

11     in the plea agreement that has been signed by

12     Mr. Meachum in this case and entered into the record as

13     Document 54.

14          MS. SIMS:  Yes, Your Honor.

15          The essential elements of the crime are as

16     follows:  Count Six:  One, the defendant knowingly used,

17     carried, brandished, and disarmed -- discharged a

18     firearm; two, during and in relation to a crime of

19     violence; and, three, for which he may be prosecuted in

01:41PM 20     a court of the United States.

21          Count Ten:  One, the defendant knowingly used,

22     carried, brandished, and discharged a firearm aided and

23     abetted by another; two, during and in relation to a

24     crime of violence; and, three, for which he may be

25     prosecuted in a court in the United States.

Count Six:  The maximum -- excuse me.  The maximum punishment for this offense is a term of imprisonment of at least ten years up to life, which must be served consecutive to any other imprisonment, a fine of up to $250,000, a term of supervised release of up to five years, and a $100 special assessment.

Count Ten:  The maximum punishment for this offense is a term of imprisonment of at least 25 years up to life, which must be served consecutive to any other imprisonment, a fine of up to $250,000, a term of supervised release of up to five years, and a $100 mandatory special assessment.

The defendant agrees and stipulates to the following facts:  On April 25th, 2015, the Midway Market located at 9145 Highway 63, Speedwell, Tennessee was robbed.  According to the victim store owner, an unknown male robber, later identified as the defendant, walked into the business dressed in a black jacket and black shirt and wore a black mask to conceal his face.  The defendant pointed a handgun, believed to be a .38 revolver at the victim and demanded money.  After taking the money and a carton of Marlboro Red cigarettes, the defendant took the victim store owner's cell phone and broke it in half.  At this time, another victim walked into the business.  This victim observed the defendant

with the gun and quickly ran back out of the store.  The

defendant chased the victim out the door and fired

approximately three rounds in his direction.  The

defendant then entered the victim's Chevrolet S-10

pickup truck and fled the location.

On May 14th, 2015, the defendant robbed the

Marathon gas station located at 4270 General Carl W.

Stiner Highway, LaFollette, Tennessee.  Defendant

pointed the firearm at several witnesses and then

discharged the weapon into the counter.  When he fired

the gun, one of the bullets struck a 12-year-old female

victim.  The defendant then went behind the counter,

opened the cash register and stole the money from the

register.  The defendant exited the store and

encountered numerous people in the parking lot.  The

defendant pointed his weapon at several people sitting

in a 2014 gray Toyota Camry which was parked in the

store parking lot and ordered them out of the vehicle.

Once they got out of the vehicle, the defendant entered

the vehicle and fled the location.

On May 19th, 2015, the defendant robbed the

Pilot convenient store located at 1915 East Raccoon

Valley Road, Heiskell, Tennessee.  The robber was

described as an unknown white male standing

approximately five foot ten inches to six feet tall and

weighing approximately 150 to 160 pounds. Witnesses

advised that the robber wore a black hooded sweater,

white shirt, blue jeans, black tennis shoes, and a skull

mask and dark gloves, and the robber acted as if he were

on drugs. A victim stated the robber entered the

business, pointed what appeared to be a handgun at her

and demanded money. Following the demand for money, the

robber fired one round from the handgun in the direction

of the victim. The victim -- the victim advised the

robber exited the store with an undetermined amount of

money and fled in a silver Honda convertible.

On the same day as the Pilot convenience store

robbery, the Campbell County Sheriff's Office received a

complaint call reporting a stolen silver Honda s2000

convertible. The stolen Honda convertible was later

found abandoned in Knox County, Tennessee.

On May 20th, 2015, the defendant and

co-defendant Hanna Michelle Blackwell were located at

the Scottish Inn located at 530 North Main Street, Room

3, Rocky Top, Tennessee. The defendant was arrested for

aggravated robbery. A search warrant was executed on

their hotel room by the Knox County Sheriff's Office and

the following items were located: Damaged Nokia

cellular phone, skeleton masks, Honda key, .22

ammunition, an improvised firearm with a .22 barrel,

foreign currency, knife, and additional miscellaneous
items.  The Honda key was returned to the victim of the
stolen Honda who identified the key as belonging to his
recovered Honda convertible.  To confirm, he
successfully utilized the key to start the vehicle.

Blackwell identified the defendant as the
perpetrator of the Marathon gas station robbery and the
Pilot convenience store robbery.  She further admitted
she went along with him on both robberies.  Blackwell
stated that she did not know he was robbing the Marathon
gas station and did not know he had a gun, but she
admitted knowing about the Pilot robbery and willingly
assisting him.  She admitted knowing that he had a gun.

Follow-up interviews revealed information that
the defendant had recently sold a silver Taurus 38
revolver to another individual.

THE COURT:  Thank you, Miss Sims.

Now, Mr. Meachum, did you hear what Miss Sims
says that you did in this case?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And do you agree that this is what
you did?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  So, Mr. Meachum, in response to the
charge set forth in Count Six of the Superseding

1    Indictment charging you with using, carrying,

2    brandishing, and discharging a weapon during and in

3    relation to a crime of violence in violation of 18

4    United States Code § 924(c)(1), how do you plead, sir;

5    guilty or not guilty?

6              THE DEFENDANT:  Guilty.

7              THE COURT:  Now, Mr. Meachum, do you understand

8    what you're pleading guilty to?

9              THE DEFENDANT:  Yes, ma'am.

01:46PM  10              THE COURT:  And are you offering to plead

11   guilty because you are, in fact, guilty?

12              THE DEFENDANT:  Yes, ma'am.

13              THE COURT:  Then in response to the charge set

14   forth in Count Ten of the Superseding Indictment

15   charging you with using, carrying, brandishing, and

16   discharging a weapon during and in relation to a crime

17   of violence while aided and abetted by another in

18   violation of 18 United States Code § 924(c)(1) through

19   (2), how do you plead?

01:47PM  20              THE DEFENDANT:  Guilty.

21              THE COURT:  And, once again, do you understand

22   what you're pleading guilty to?

23              THE DEFENDANT:  Yes, ma'am.

24              THE COURT:  And are you offering to plead

25   guilty because you are, in fact, guilty?

1    THE DEFENDANT:  Yes, ma'am.

2    THE COURT:  Now we're going to talk a little

3    bit about what to expect during the sentencing phase.

4    Do you understand that I may order you to make

5    restitution to any victim of this offense?

6    THE DEFENDANT:  Yes, ma'am.

7    THE COURT:  And do you further understand that

8    I may order you to forfeit certain property to the

9    government?

01:47PM  10    THE DEFENDANT:  Yes, ma'am.

11    THE COURT:  Now, Mr. Meachum, if I accept your

12    guilty plea, you will be adjudged guilty of a felony,

13    and this may deprive you in some states of valuable

14    civil rights, such as the right to vote, the right to

15    hold public office, the right to serve on a jury, and

16    the right to possess any kind of firearms and

17    ammunition.  Are you aware of that fact?

18    THE DEFENDANT:  Yes, ma'am.

19    THE COURT:  Mr. Meachum, I must advise you that

01:48PM  20    I will consider the applicable sentencing guidelines,

21    but I may depart from those guidelines under certain

22    circumstances.

23    Has Mr. Sharp, your attorney, discussed with

24    you the possible application of the sentencing

25    guidelines to your case?

1            THE DEFENDANT:  Yes, ma'am.

2            THE COURT:  I must also further advise you that

3       if I accept your plea of guilty, your sentence may be

4       enhanced or increased due to any prior convictions that

5       you may have; are you aware of that fact?

6            THE DEFENDANT:  Yes, ma'am.

7            THE COURT:  And do you also realize that if I

8       accept your plea of guilty, a judgment of conviction

9       will result, and that conviction may be used against you

01:49PM  10      in the future if you are convicted in a subsequent

11      proceeding to enhance or increase any sentence that you

12      might receive for future offenses; are you aware of

13      that?

14           THE DEFENDANT:  Yes, ma'am.

15           THE COURT:  Now, I have received the plea

16      agreement in your case, but I am not required to accept

17      it.  I may defer my decision of whether to accept the

18      plea agreement until I have received and reviewed the

19      Presentence Report from the probation office.

01:49PM  20           If I decide to reject the plea agreement, you

21      will be advised of that decision in open court and you

22      will be allowed to reconsider or withdraw your plea of

23      guilty.

24           Now, Mr. Meachum, in your plea agreement, you

25      are waiving certain rights.  Specifically, with regard

to your right to appeal, do you understand that under
the terms of the plea agreement in this case, you will
have a right to appeal a sentence that is imposed above
the sentencing guideline range or above any mandatory
minimum sentence, whichever is greater, but, otherwise,
you understand that you are waiving the right to file a
direct appeal of either your conviction or your
sentence?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Do you also understand that you are
waiving or giving up the right to challenge the duration
or the conditions of any term of supervised release that
I impose?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  You also are giving up the right to
appeal my determination as to whether your sentence will
be consecutive or partially concurrent to any other
sentence; do you realize that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Now, under the terms of your plea
agreement, you will have a right to file a claim for
ineffective assistance of counsel or prosecutorial
misconduct, but, otherwise, you understand that you are
waiving the right to file any motions or pleadings under
28 United States Code § 2255 to collaterally attack your

conviction or sentence?

        THE DEFENDANT:  Yes, ma'am.

        THE COURT:  Do you also understand that under some circumstances, the government may have the right to appeal the sentence that I impose?

        THE DEFENDANT:  Yes, ma'am.

        THE COURT:  Now, Mr. Meachum, the government has not made any agreement to recommend a particular sentence.  So you know that your sentence will be determined by me after I consider the sentencing guidelines and other information that is relevant to your case?

        THE DEFENDANT:  Yes, ma'am.

        THE COURT:  And, Mr. Meachum, you do understand that you will not be permitted to withdraw your guilty plea based on the sentence that you might receive?

        THE DEFENDANT:  Yes, ma'am.

        THE COURT:  Now, I will not be able to determine the appropriate sentence until I have received the Presentence Report.  You and the government will have the opportunity to consider and challenge the facts in that report.

        Now, Mr. Meachum, you understand that parole has been abolished?

        THE DEFENDANT:  Yes, ma'am.

1            THE COURT:  So you know that if I sentence you

2    to prison, you will not be released on parole?

3            THE DEFENDANT:  Yes, ma'am.

4            THE COURT:  Are you currently on probation for

5    any previous offenses?

6            THE DEFENDANT:  I don't know.

7            (A discussion was had off the record between

8             the defendant and his counsel.)

9            THE DEFENDANT:  Yes, ma'am.

01:52PM 10            THE COURT:  So you do think you are still on

11   probation?

12            THE DEFENDANT:  Yes, ma'am.

13            THE COURT:  Now, do you understand that if you

14   plead guilty in this case, your probation may be revoked

15   in the other case?

16            THE DEFENDANT:  Yes, ma'am.

17            THE COURT:  Are you presently on parole from

18   any penal institutions?

19            THE DEFENDANT:  Yes, ma'am.

01:53PM 20            THE COURT:  All right.  Do you understand that

21   by pleading guilty in this case, you may be found to

22   have violated your conditions of parole?

23            THE DEFENDANT:  Yes, ma'am.

24            THE COURT:  Now, Mr. Meachum, I am required to

25   inform you that as a condition of any period of

supervised release that is imposed in this case, that

supervised release will be revoked if you are found in

possession of a controlled substance, a firearm, or

ammunition.  So you understand that this revocation is

now mandatory under federal law?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Mr. Meachum, knowing all these

penalties, do you still wish to plead guilty?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Very well.

I have observed the appearance of Mr. Meachum

here in court this afternoon and I have heard his

answers to the questions that I have asked.  Based on my

observations and his answers to my questions, I find

that Mr. Meachum is fully competent and capable to enter

a plea of guilty.

Mr. Meachum, your plea of guilty to violating

18 United States Code § 924(c)(1) as set forth in Count

Six of the Superseding Indictment and your plea to

violating 18 United States Code § 924(c)(1) through (2)

as set forth in Count Ten of the Superseding Indictment

are accepted.

Mr. Meachum is in full possession of his

faculties this afternoon.  He is competent to plead

guilty.  He is not here today under the influence of

1  narcotics or other drugs or alcohol.  He has knowingly

2  waived his constitutional right to trial and the other

3  rights accorded to persons accused of a crime.

4       Mr. Meachum understands the nature of the

5  charges to which the pleas are offered and the maximum

6  and minimum penalties that are provided by law for these

7  offenses.

8       Mr. Meachum has offered to plead guilty

9  knowingly and voluntarily.  He understands the plea

01:55PM  10  agreement that's been made on his behalf.  Accordingly,

11  the guilty pleas will be accepted.

12       Mr. Meachum, you are hereby adjudged guilty of

13  violating 18 United States Code § 924(c)(1) as set forth

14  in Count Six of the Superseding Indictment, and you are

15  adjudged guilty of violating 18 United States Code §

16  924(c)(1) through (2) as set forth in Count Ten of the

17  Superseding Indictment.

18       Now, Mr. Meachum, you're going to be asked to

19  provide information to the probation officer so that the

01:55PM  20  probation officer can prepare the Presentence Report in

21  your case.  You may have your attorney present with you

22  during that conference if you desire.

23       Counsel are referred to Local Rule 83.9

24  regarding sentencing procedures.  Within 14 days of the

25  receipt of the Presentence Report, the parties shall

1    file with the court any objections they may have to the

2    Presentence Report.  A party having no objections to the

3    report shall file a Notice of No Objections.

4            Counsel for the government must file with the

5    court and provide copies to the probation office and all

6    counsel of record any enhancements the government will

7    seek to rely upon to determine the appropriate sentence

8    in this case, along with the sentencing memoranda

9    setting forth the government's position -- the

01:56PM  10   government's reason for the requested enhanced sentence.

11           Defense counsel must file with the court any

12   requests for a variance from the sentence recommended by

13   the sentencing guidelines, along with the sentencing

14   memoranda setting forth Mr. Meachum's position as to why

15   a variance from the recommended guideline sentence would

16   be appropriate in his case.

17           If an evidentiary hearing is required on any

18   requested enhancement, variance, or any objection to the

19   Presentence Report, the party must expressly request a

01:57PM  20   hearing at the time of filing any objections or

21   response.  Failure to file a request for an enhancement,

22   variance or objection to the Presentence Report may

23   result in a denial of the request.

24           Now, Mr. Meachum, you and your attorney will be

25   permitted to speak on your behalf at the sentencing

 1    hearing in this case, which will be held on

 2    November 16th, 2017, at 10 o'clock a.m.

 3            Now, sir, you will remain in the custody of the

 4    United States Marshal and be produced for your

 5    sentencing hearing on November 16th, 2017, at 10 o'clock

 6    a.m.

 7            Mr. Sharp, is there anything further on behalf

 8    of your client?

 9            MR. SHARP:  No, Your Honor.  Thank you.

01:57PM 10            THE COURT:  Miss Sims, anything further on

11    behalf of the government?

12            MS. SIMS:  Nothing further, Your Honor.

13            THE COURT:  Very well.  With nothing further,

14    then we will stand in recess.

15            THE COURTROOM DEPUTY:  All rise.

16            This honorable court is now in recess.

17            (Which were all the proceedings had and

18             herein transcribed.)

19                    * * * * * * *

20

21

22

23

24

25

```
1                      C-E-R-T-I-F-I-C-A-T-E

2    STATE OF TENNESSEE

3    COUNTY OF KNOX

4            I, Teresa S. Grandchamp, RMR, CRR, do hereby

5    certify that I reported in machine shorthand the above

6    proceedings; that the foregoing pages were transcribed

7    under my personal supervision and constitute a true and

8    accurate record of the proceedings.

9            I further certify that I am not an attorney or

10   counsel of any of the parties, nor an employee or

11   relative of any attorney or counsel connected with the

12   action, nor financially interested in the action.

13           Transcript completed and signed on Monday,

14   February 8, 2021.

15

16

17

18


20   _____
             TERESA S. GRANDCHAMP, RMR, CRR
21           Official Court Reporter

22

23

24

25
```